IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF OHIO

PHOTO EXCHANGE BBS, INC.               )
doing business as  SouthernCharms.com  )
12 Heatherwood Lane                    )     CIVIL ACTION NO.:2:10-cv-566
Oxford, Alabama 36203,                 )
                                       )
William D. Wesson                      )
12 Heatherwood Lane                    )
Oxford, Alabama 36203,                 )     JUDGE: _____
                                       )
Laura H. Wesson                        )
12 Heatherwood Lane                    )
Oxford, Alabama 36203,                 )
                                       )
Richard Atkinson                       )
1503 Davis Street SE                   )
Jacksonville, Alabama 36265, and       )
                                       )
Judy Atkinson                          )
1503 Davis Street SE                   )
Jacksonville, Alabama 36265,           )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )
                                       )
Jonathan D. Sheline                    )
403 Spring Street                      )
Lancaster, Ohio 43130,                 )
                                       )
Rebecca Sheline                        )
403 Spring Street                      )
Lancaster, Ohio 43130,                 )
                                       )
JOHN DOE 1 – 20, and                   )
                                       )
JANE DOE 1-5,                          )
                                       )
            Defendants.                )
                                       )
                                       )
                                       )
                                       )

## COMPLAINT FOR DAMAGES, INFRINGEMENT AND INJUNCTIVE RELIEF WITH DEMAND FOR JURY TRIAL

Now come Plaintiffs, Photo Exchange BBS, Inc., Bliss Photography Studios, LLC, William D. Wesson, Laura H. Wesson, Richard Atkinson and Judy Atkinson, by and through counsel, and for their Complaint against Jonathan D. Sheline, Rebecca Sheline, John Doe 1 through 20, and Jane Doe 1 through 5, state as follows:

### *NATURE OF THE ACTION*

This is a civil action against Defendants for their acts of copyright infringement, service mark infringement, service mark infringement, false designation of origin, cyberpiracy, deceptive trade practices, defamation per se, defamation per quod, public disclosure of private facts, false light, misappropriation of name and likeness, tortious interference with contract, tortious interference with business relationship, intentional infliction of emotional distress, loss of consortium, intentional destruction of evidence, negligent destruction of evidence, conspiracy and punitive damages.

### *JURISDICTION AND VENUE*

1.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b).

2.      This Court has jurisdiction over the common law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391 (b)(1) & (2), and 28 U.S.C. §1400 because the primary Defendants Jonathan D. Sheline and Rebecca Sheline  reside in the District and a substantial number of the acts complained of herein originated in this District.

4.      More particularly, Ohio and specifically this District are directly involved in this suit as the Defendants' actionable conduct has either been produced, or electronically published to Ohio residents and/or has been knowingly published by one or all of the Defendants into Ohio.

### *THE PARTIES*

### The Southern Charms Parties

5.      Photo Exchange BBS, Inc., doing business as Southern-Charms.com ("Photo Exchange" or "SC"), is an Alabama corporation with its principal place of business at 12 Heatherwood Lane, Oxford, Alabama.

6. Photo Exchange is the sole and exclusive owner of the entire right, title and interest in and to the Internet domain names Southerncharms.com and Southern-Charms.com from which it has been operating its website since 1996.

7. On August 23, 2005, Photo Exchange's registration for the service mark "Southern Charms" with the United States Patent and Trademark Office was completed and is identified by serial number 78395307. Photo Exchange also holds service marks for the name "Southern Charms" issued on September 27, 2005, as serial number 78440226, and May 22, 2007, as serial number 78923202.

8. Photo Exchange operates as "Southern Charms" in connection with providing Internet entertainment services, namely, providing a website with photographic, audio, video and prose presentations featuring adult entertainment.

9. SC's service mark protects its operations, including its domain names, Southerncharms.com and Southern-Charms.com.

10. SC is widely recognized as one of the largest amateur adult entertainment websites in the world as demonstrated by one of its service marks, "welcome to the largest amateur site in the world." The use of the term "amateur" in its brand is not intended to indicate any lack of sophistication in the operation of SC's business and instead is a term used to convey the type of content available at its website.

11. SC's website is a very well established in its industry and its primary method of operation is to provide, operate, maintain and manage a central website from which customers can access the content of between seven hundred (700) and eight hundred (800) female and male independent contractor models/performers ("performers") who operate their own sub-sites connected to the SC website by posting content the performers generate and exclusively license to SC.

12. SC's website, including all the internet access to the sub-sites of its performers receives on average over one hundred ninety million (190,000,000) hits per day. Operating SC's website requires significant oversight, technical skill, management, electronics, software and computer equipment which results in a significant annual operating cost.

13. SC pays for all operating expenses associated with the website at no cost to the performers whose sub-sites and content it hosts.

14. SC generates revenue only if the sub-sites of its performers receive paid memberships. Revenue from memberships is first split with the performers and SC and then its marketing, regulatory compliance, and all other operating costs are paid from SC's portion of the revenue. SC is still responsible for all such costs whether or not its portion of membership revenue is sufficient to sustain its operating costs or reaches a particular threshold.

15. SC's business model is only successful if it reaches a certain level of sales. SC maintains its sales by offering a well run website with a wide variety of content provided by a large number of performers who periodically add new content. SC's customers purchase memberships based on these factors and SC's reputation for these services.

16.     SC's ability to maintain its volume and frequency of new content depends in large part on its business relationship with its performers. Some SC customers prefer certain performers over others and make decisions about continuing their memberships based on the performers that provide content to SC.

17.     Bliss Photography Studios, LLC ("Bliss Photography"), is an Alabama limited liability company engaged in commercial photography, specializing in portrait photography of newborns, babies, children, families, and weddings.

18.     William Wesson is an individual residing in the State of Alabama and is the sole shareholder of SC. William Wesson also is the sole owner of Wesson Aviation, LLC ("Wesson Aviation").

19.     Laura Wesson is an individual residing in the State of Alabama, the wife of William Wesson and the sole member/owner of Bliss Photography.

20.     Richard Atkinson is an individual residing in the State of Alabama and the prior owner of SC, as well as an independent contractor for SC who provides website maintenance and related services. Although no longer a shareholder of SC, Mr. Atkinson is an officer of SC.

21.     Judy Atkinson is an individual residing in the State of Alabama and is the wife of Richard Atkinson.

### The Freakdaddy Network Parties

22.     Defendants Jonathan D. Sheline and his wife, Rebecca Sheline (collectively, the "Shelines"), are individuals residing in this District and they own, operate, disseminate and publish the websites Freakdaddys.com, Freakmommas.com, Freakmommas2.com, Freakmommas3.com, Chat.freakdaddyforum.com, and Madskillvids.com under the trade name Triple SSS Publishing (collectively, the "Freakdaddy Network"). In addition, the Freakdaddy Network has its own "sex toy store" and advertises "free swingers adds."

23.     The Freakdaddys.com and Freakmommas.com websites are the alter egos of the Shelines and the business of the Freakdaddy Network is the adult entertainment business, including but not limited to a website with photographic, audio, and video presentations featuring various forms of adult entertainment.

24.     According to Mr. Sheline, he started in the internet adult entertainment business in 1996 while still serving in the United States Army and within months, he was earning over $4,000.00 per month in adult entertainment, more than his Battalion Commander at the time. (See Exhibit A.)

25.     Upon information and belief, all or part of the Freakdaddy Network was not started until 1997 with the formation of Triple SSS Publishing, Ltd., an Ohio limited liability company owned by Mr. Sheline and The Jennifer Sheline Revocable Trust.

26.     Upon information and belief, Triple SSS Publishing, Ltd. registered the domain "Freakdaddys.com" in 1999. On or about September 1, 2003, Triple SSS Publishing, Ltd. was

dissolved by Mr. Sheline.

27. Upon information and belief, Mr. Sheline and his first wife, known as Lynn Sheline (and presumed to be the beneficiary of The Jennifer Sheline Revocable Trust, the other shareholder of Triple SSS Publishing, Ltd.) divorced and Mr. Sheline kept the assets of the business which he continued to operate.

28. On or about March 20, 2004, Mr. Sheline personally registered the tradename "Triple SSS Publishing" with the State of Ohio, and Mr. Sheline and his current wife, Defendant Rebecca Sheline, jointly own and operate the Freakdaddy Network under the name Triple SSS Publishing.

29. Upon information and belief, The Freakdaddy Network has approximately seventy-five 75 male and female performers, including the Shelines and a number of form SC performers, who offer pictures and videos for sale through membership subscriptions in a manner similar to that of SC.

30. Jonathan Sheline is the owner of the tradename Triple SSS Publishing registered with the Ohio Secretary of State.

31. Upon information and belief, the Shelines also disseminate, publish, contribute to and/or own all or part of the numerous other websites registered to Triple SSS Publishing.

32. The Shelines operate the aforementioned websites in conjunction with each other using the aforementioned domain names, as well as domain names based on the corporate name and website of SC, including but not limited to the domain names "Photoexchangebbs.com" and "Southern--Charms.com" which contains two hyphens between "Southern" and "Charms" versus the single hyphen as used in the otherwise identical domain name owned by SC.

33. At no time have the Shelines ever owned an interest in the business of SC, including the SC website or any SC intellectual property rights.

34. Upon information and belief, Jonathan Sheline and one or more of the John Does were subscribers to the SC website during which time they acquired certain content they now illegally display on the Freakdaddy Network in violation of the owners' copyrights, as well as the user agreement they would have entered into during the SC member registration process.

35. Upon information and belief, Defendant John Doe 1 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "BountyHunter".

36. Upon information and belief, Defendant John Doe 2 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Ogosity - Southern Charms Watchdog," and the ex-husband of a former SC performer. Upon information and belief, Defendant John Doe 2 may also use the screen name "Firebugsboytoy." Upon information and belief, Defendant John Doe 2's real name may be David Scott Brusveen, an individual whose current whereabouts are unknown and who is listed on the State of Oklahoma's Child Support Services most wanted website as someone that cannot

be located.

37.    Upon information and belief, Defendant John Doe 3 is a subscriber and/or member of the Freakdaddy Network using the screen name "BigDaddy," as well as the screen name "Big Daddy Photog."   Upon further information and belief, John Doe 3 was the former husband of the SC performer known as "Buddah."   Upon further information and belief, John Doe 3's name is Michael Russell but no other information is known about John Doe 3 at this time.

38.    Upon information and belief, Defendant John Doe 4 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Maturebutfun."

39.    Upon information and belief, Defendant John Doe 5 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Pantycraze_mike."

40.    Upon information and belief, Defendant John Doe 6 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "SickBoyHC."

41.    Upon information and belief, Defendant John Doe 7 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "David Gibbs."

42.    Upon information and belief, Defendant John Doe 8 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Alex Xela."

43.    Upon information and belief, Defendant John Doe 9 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "JS."

44.    Upon information and belief, Defendant John Doe 10 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Pathavican."

45.    Upon information and belief, Defendant John Doe 11 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "SenWolf."   Defendant John Doe 11 (aka SenWolf) is also believed to be an owner or operator of a website competing with SC for the same subscribers.   Upon further information and belief John Doe 11 owns and/or operates an internet company in Petoskey, Michigan called "userveme.com," which provides network security and other services which John Doe 11 claims to have at one time provided for Southern Charms performers.

46.    Upon information and belief, Defendant John Doe 12 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Feaster69."   Upon information and belief, John Doe 12 is also the owner of a

competing website called "ATCwebmodels.com" operated from Rome, Ohio.

47.     Upon information and belief, Defendant John Doe 13 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Thtanley Thteemer."

48.     Upon information and belief, Defendant John Doe 14 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Gradgrind."

49.     Upon information and belief, Defendant John Doe 15 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Barry00."

50.     Upon information and belief, Defendant John Doe 16 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Axios."

51.     Upon information and belief, Defendant John Doe 17 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Toymaker."

52.     Upon information and belief, Defendant John Doe 18 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Epaging."

53.     Upon information and belief, Defendant John Doe 19 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "RM100."

54.     Upon information and belief, Defendant John Doe 20 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber of Southern Charms using the screen name "Ebokl."

55.     Upon information and belief, Defendant Jane Doe 1 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber and/or performer of Southern Charms using the screen name "Black Rose."

56.     Upon information and belief, Defendant Jane Doe 2 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber and/or performer of Southern Charms using the screen name "Madm54."

57.     Upon information and belief, Defendant Jane Doe 3 is a subscriber and/or member of the Freakdaddy Network and current or former subscriber and/or performer of Southern Charms using the screen name "Riverann-FDGirls."

58.     Upon information and belief, Defendant Jane Doe 4 is a subscriber and/or member of the Freakdaddy Network and former performer of Southern Charms using the screen

name "ScaredCharmFedUp."

59.     Upon information and belief, Defendant Jane Doe 5 is a subscriber and/or member of the Freakdaddy Network and former performer of Southern Charms using screen name "Farrah-FM3."  Upon further information and belief, Farrah-FM3 may be known as Melody Shephard.

60.     Plaintiffs do not know the true names of John Doe Defendants 1 though 20, and therefore sue them by their fictitious names. Plaintiffs are informed and believe, and on the basis of that information and belief allege, that each of those defendants was in some manner responsible for the events and happenings alleged in this Complaint and for Plaintiffs' injuries and damages.

61.     Upon information and belief and at all times relevant to this Complaint, Defendants John Doe 1 (aka Bountyhunter) and John Doe 2 (aka Ogosity) were the agents and employees of the Shelines, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

## *FACTUAL BACKGROUND*

62.     At all times relevant to the allegations of this Complaint, persons obtained access to the Internet through many different networks linked directly to the Internet, including but not limited to those networks operated various Internet Service Providers, telephone companies providing both land based and cellular services, employers, schools, community organizations, libraries, and various commercial establishments.

63.     At all times relevant to the allegations of this Complaint, persons accessed information on the Internet via message boards, bulletin boards, chat rooms, e-mail, subscriber based news groups, social media websites, and e-mail lists (collectively, "message boards").

64.     Messages entered for publication to a message board are placed in a form online on a particular website and/or e-mailed to a specific e-mail address to be posted by the operator of the message board. These messages are sometimes referred to herein as "posts."

65.     A particular post, when first made by a person as an original post and not in response to a prior post, will constitute a new "topic" on the message board.  Subsequent posts in response to or related to the original post are then organized under the original topic.

66.     At all times relevant to the allegations of this Complaint, persons who did not know the address or specific name of a given website, or who conducted generalized searches, accessed websites by means of a "search engine," which found the websites by using a keyword or strings of words to locate those sites.

67.     At all times relevant to the allegations of this Complaint, persons also searched the Internet by "linking" from one website to another, which they did by clicking onto "links," which were segments of text generated as a result list by a particular search engine, as well as linked text and "banner" images in one website that referred and linked to another website.

68.     Certain message boards and posts are not only displayed on websites but are also re-published via e-mail to subscribers using an automated e-mail list manager sometimes referred to as a "listserv."

69.     In addition to content on a message board, visitors can view posts, make their own posts, and comment and exchange messages about other posts.

70.     The Shelines own and operate the Freakdaddy Network in and from Ohio and, as a result, the content on their websites emanates from Ohio.

### *FACTUAL ALLEGATIONS*

71.     Defendants have sought to harm, have harmed and will continue to harm Plaintiffs personally, as well as the business of SC through their use of the Freakdaddy Network, particularly the Freakdaddy Forum and message boards, as well as a actions occurring outside of the Freakdaddy Network.

72.     Defendant Jonathan Sheline, in his own name and using his screen names "Cyrix" and/or "Cyrix-FD Network," and/or "Freakdaddy," in addition to personally undertaking most of the actions forming the basis of Plaintiffs' Complaint, has also sought to incite others to take certain actions against Plaintiffs.

73.     Plaintiffs have sustained damages and will continue to sustain damages to their persons, property, business, as well as certain irreparable harm as a result of the acts and omissions of Defendants, including but not limited to the following described conduct forming the basis of Plaintiffs' Complaint.

### Allegations Involving the Freakdaddy Network Message Boards

74.     Defendants used at least three (3) of the twelve (12) messages boards on the Freakdaddy Forum portion of the Freakdaddy Network to repeatedly harm Plaintiffs continuously from October 2007 through the date of this filing to A) make defamatory, derogatory, untruthful, negligent, reckless, willful and/or malicious posts about the personal and private lives of the individual Plaintiffs, B) make defamatory, derogatory, untruthful, negligent, reckless, willful and/or malicious posts about SC's business and other businesses owned by the individual Plaintiffs, including disseminating confidential business information and trade secrets, and C) make posts containing current and former content from SC's site, including but not limited to displaying images owned by Plaintiffs and SC's performers, infringing on their respective service marks and copyrights.

75.     Upon information and belief, a number of the posts on the Sheline's messages boards contain links to the SC website.

76.     The twelve (12) message boards appearing in the Freakdaddy Forum are shown on the attached Exhibit B depicting the Freakdaddy Forum's Index as of May 25, 2010.  The messages boards pertaining to Plaintiffs are titled A) *"Southern Charms Happenings – Get the 411 – Charms.  You won't be outed for signing up or posting on this forum.  Owners of Southern Charms:  William and Laura Wesson:: Richard and Judy Atkinson, Alabama"* which was

subsequently renamed by Mr. Sheline to "*Southern Charms Watchdog Area – Get the 411*," B) "*Former SC Chicks Traders Area*," and C) "*Gloves Off Area – Come get some you punk ass bitch!*"

77.　　Exhibit B shows that on or about May 25, 2010 there were 9148 separate topics and approximately 43,520 posts in the Freakdaddy Forum with 12,218 registered members.

78.　　Exhibit B also shows that on or about May 25, 2010, the Freakdaddy Forum message board titled "Southern Charms Watchdog Area – Get the 411" (the "SC Watchdog Board") contained 790 separate topics with a total of 4924 posts dedicated exclusively to harming Plaintiffs as further set forth herein.  The 4924 posts were viewed hundreds of thousands of times by the general public as can be demonstrated by website statistics.  Exhibit B further demonstrates that just the posts on the SC Watchdog Board (4924) constitute over ten percent (11%) of the total posts (43,520) in the entire Freakdaddy Forum.

79.　　Exhibit C is the first page of a sixteen (16) page index for the SC Watchdog Board showing the individual topic titles which comprise the 790 topics.  Exhibit C also shows the detail on the original posting member, the responses to the post, the views of the post and the date it was last updated.  The date of origination can generally be shown in the actual post itself.

80.　　Exhibit B also shows that as of May 25, 2010, the Freakdaddy Forum message board titled "Former SC Chicks Traders Area" (the "SC Content Board") contained approximately 302 separate topics with a total of  2193 posts dedicated exclusively to harming Plaintiffs and advancing the Freakdaddy Network by providing a place for anyone (including all the John Doe defendants) to post for others to illegally copy current and former exclusively licensed content from the SC website, including images owned by Plaintiffs and SC's performers.  These 2193 posts were viewed many tens, if not hundreds of thousands of times by the general public as can be demonstrated by website statistics.  Exhibit B further demonstrates that just the posts on the SC Content Board constitute over five percent (5%) of the total posts emanating from the Freakdaddy Network.

81.　　Exhibit D is the first page of an eleven (11) page index for the SC Content Board showing the individual topic titles.  Exhibit D also shows the detail on the original posting member, the responses to the post, the views of the post and the date it was last updated.  The date of origination can generally be shown in the actual post itself.  Exhibit D contains a higher number of topics and posts than shown by Exhibit B because Exhibit D is from June 4, 2010.

82.　　Exhibit E shows that the SC Content Board was the subject to much internal debate on the Freakdaddy Network and Defendant Jonathan Sheline even posted messages acknowledging the impropriety of such conduct and ignoring the warnings of other members of the Freakdaddy Network, and vowing to continue to post the SC content in violation of applicable law.  Exhibit E is comprised of posts from three separate topics and includes posts from Freakdaddy Network members and many co-Defendants.  Over a few day period, these posts were read well over one thousand (1,000) times based on the statistics shown on the Freakdaddy Network.

83.　　On numerous occasions Defendant Jonathan Sheline posted messages taunting

Plaintiffs, indicated that he wanted Plaintiffs to sue him and that he would not stop his conduct, even if he lost everything to fight them.

84.    Exhibit B also shows that as of May 25, 2010, the Freakdaddy Forum message board titled "Gloves Off Area – Come get some you punk ass bitch!" (the "Gloves Off Board") contained 1724 separate topics with a total of 12655 messages.

85.    Upon information and belief, messages relating to SC and certain allegations by Plaintiffs in this Complaint, including but not limited to the aforementioned discussions by the members of the Freakdaddy Network expressing various opinions as to the illegality of posting tens of thousands of SC images on the Freakdaddy Network, were removed by Mr. Sheline prior to Plaintiffs' filing this Complaint.  Due to the number of messages on the Gloves Off Board it would be very difficult, if not impossible, to determine how many messages on the Gloves Off Board pertained to Plaintiffs, particularly since a number of posts appear to have been removed. However, the Gloves Off Board appears to have a significant amount of information about SC.

86.    At a minimum, the messages directed at injuring Plaintiffs and/or advancing the Freakdaddy Network at the cost of SC comprise sixteen percent (16%) of the content and traffic on the Freakdaddy Network.

87.    Of the performers displayed on the Freakdaddy Network, approximately seventy-five percent (75%) are or were Southern Charms who are being illegally displayed.

88.    The illegal availability of content generated by, for and/or still labeled as SC content most likely matches or exceeds the Freakdaddy specific content available to members on all the Freakdaddy and Freakmomma websites combined.

89.    The posts on the Freakdaddy Forum message boards are available to the general public and prior to the date of filing could be viewed by anyone without taking any affirmative action other than clicking a box to confirm that they were at least eighteen (18) years old.

90.    Upon information and belief, Defendants have removed a significant number of posts on the SC Watchdog Board, SC Content Board, and Gloves Off Board in an effort to interfere with Plaintiffs claims against them.   In particular, Defendants have removed several hundred topics and at least as many posts (as each topic must contain at least one post and most topics contain multiple posts).

91.    Upon information and belief, each separate post within each topic contained evidence material to the subject matter of this Complaint.

92.    Defendants altered the Freakdaddy Network and removed hundreds of topics and posts, constituting important evidence, after Plaintiffs' counsel sent written notice instructing Mr. Sheline and his attorney to preserve all evidence on June 2, 2010.

93.     Mr. Sheline acknowledged receiving the June 2, 2010, letter, attached hereto as Exhibit F, as evidenced by the fact that Mr. Sheline posted the letter and a link to the personal biography page of Plaintiffs' counsel on the Freakdaddy Forum on or about June 3, 2010.

94.     In addition, Mr. Sheline made a post on or about June 2, 2010, about being visited by detectives in connection with Plaintiffs submitting evidence to the Lancaster Police Department regarding conduct by Mr. Sheline which they feel constitutes menacing by stalking under Ohio law.  In his post, Mr. Sheline indicates that he is not scared, he will not remove the message boards and content and that he and his wife will not back down.

95.     On June 4, 2010, after observing the index pages for the Freakdaddy Forum message boards, Plaintiffs noticed that the Defendants had not ceased altering or removing posts and other content from the message boards.  On June 4, 2010, Plaintiffs' counsel sent Mr. Sheline and his counsel a second notice, by facsimile and overnight courier, to cease destruction of evidence from the Freakdaddy Forum  and that anything removed (whether or not removed in compliance with Plaintiffs' cease and desist demand as it related to illegal, improper, malicious, and other actionable content) would have to be maintained for discovery purposes.  Plaintiffs' second notice to Mr. Sheline and his counsel is attached hereto as Exhibit G.

96.     Upon information and belief, Defendants continue to remove and modify content from the Freakdaddy Network, without having preserved such information, in an effort to avoid liability and to frustrate Plaintiffs' efforts to pursue this lawsuit.

97.     Upon information and belief, after receiving notice of the forthcoming lawsuit by Plaintiffs, Defendant Sheline attempted to restrict access to the Freakdaddy Forum message boards by requiring that parties accessing such information first be registered members on the Freakdaddy Network. Upon further information and belief, Mr. Sheline has manipulated this setting on his Freakdaddy Forum several times since receiving notice of the forthcoming lawsuit and such areas may once again be unrestricted.

98.     Upon information and belief, all that is required to register on the Freakdaddy Network is a valid email address and that there is no cost for such registration for access to the Freakdaddy Network.

99.     With over 12,000 registered members already on the Freakdaddy Network, removing the SC related message boards from open public viewing has had no effect on the impact or exposure of the Freakdaddy Network's negative campaign against SC.  Upon further information and belief, the Shelines utilize a listserv to notify their members and/or subscribers of certain postings.

100.     Upon information and belief, the SC Content Board on the Freakdaddy Forum contains hundreds of thousands of images which were, at least until Mr. Sheline received notice of the probable filing of a lawsuit by Plaintiffs against him, viewable by the general public without even registering.  In addition to the images, there are countless videos available to view and download.

101.    The SC content made available by Defendants on the SC Content Board of the Freakdaddy Forum are presented for the express purpose of copying by anyone who wants the content in the form of a "zip" file which is a compressed file delivery system that enables the parties accessing such files to obtain as many as several hundred images at one time by downloading one "zip" file with all such images compressed for simplicity in downloading.

102.    Upon information and belief, in comparison to the amount of content available from the various Freakdaddy Network performers, the Freakdaddy Forum's SC Content Board posts significantly more content.  More particularly, upon information and belief, the Freakdaddy Network offers content from approximately three hundred (300) former SC models versus the approximately seventy-five (75) of its own.

103.    The SC Content Board is also restricted to only SC content and Mr. Sheline, as the administrator, and the member using the screen name "BountyHunter" remove any content that is not from SC, apparently being of the belief that they will only damage SC by doing so.

104.    Upon information and belief, one or more of the Defendants obtained SC content as a member or former SC subscriber, stored the content on their personal computer(s) and subsequently posted the content on the Freakdaddy Network to increase the availability of free content on the Freakdaddy Network, increase the likelihood that persons looking for SC content would visit the Freakdaddy Network, increase the likelihood that persons looking for SC content would become subscribers of the Freakdaddy Network, and decreasing the likelihood that persons looking for SC content would have to visit the SC website to become paying subscribers to access such content.

### Factual Allegations Related to Defendants' Harassment of Plaintiffs through E-Mail, Letters, Telephone Calls and the Publication of their Personal Information

105.    Defendant Jonathan Sheline has also confirmed by multiple posts on the SC Watchdog Board that he contacts every new SC performer contractor in an attempt to get them to terminate their business relationship with SC.  A sample of the unsolicited emails sent to SC's performers is attached hereto as Exhibit H.

106.    Mr. Sheline has also confirmed in posts on the SC Watchdog Board that he sent unsolicited letters through the postal service to Plaintiffs' neighbors, with false information, disclosing certain personal information about them, including certain photographs of them which he neither owned nor had the rights to possess or distribute.  A sample of one such letter is attached as Exhibit I.  The letter does not include the pictures sent to their neighbors for privacy reasons.

107.    On March 11, 2010, Mr. Sheline posted Mr. Wesson's FAA license information and posted defamatory messages about Mr. Wesson's aviation business as shown in Exhibit J.

108.    On March 9, 2010, Mr. Sheline posted Mr. Wesson's cell phone number and encouraged numerous people to make prank phone calls to him to disturb him, his family and his business.  Defendants John Doe 16 (aka Axios), John Doe 1 (aka BountyHunter) and John Doe 2 (aka Ogosity) all posted that they had called Mr. Wesson. (See Exhibit K).

109.    Mr. Sheline posted a video of himself on October 10, 2008, in which he reads Mr. Atkinson's personal cell phone number so that others can clearly hear it, then dials the number, and leaves a harassing voicemail message for Mr. Atkinson.  After Defendant Mr. Sheline posted this video with Mr. Atkinson's cell phone number in which Mr. Sheline calls and leaves him a harassing voicemail message, Mr. Atkinson received many other calls which were apparent prank phone calls in which callers would listen and hang up and sometimes leave messages shouting obscenities in the phone, as Mr. Sheline demonstrated in his video posting. (See Exhibit L)

110.    Mr. Sheline posted defamatory messages about Mrs. Wesson's photography business, Bliss Photography, as shown in Exhibit M.  In the same topic, Defendant John Doe 2 (aka Firebugsboytoy) admits that he and John Doe 20 (aka ebok1) conspired to contact other photography studios with the same name to inform them that Mrs. Wesson had previously been a nude model in an effort to harm her person and business. Defendants also falsely claim that: Mr. Wesson owns SC; that Mr. Atkinson owns SC; and that Mr. Atkinson is a church deacon, none of which are true.  In addition, Defendants also falsely claim that SC was tied to a convicted child pornographer, which is also untrue.

111.    Mr. Sheline posted personal photographs of Mr. Atkinson's family, friends and children in the Freakdaddy Forum which Mr. Sheline took from Mr. Atkinson's geneology website.  Mr. Sheline knew he was not authorized to copy or display the pictures as Mr. Atkinson owned the copyright on such pictures.

112.    Mr. Sheline also posted the personal, family and wedding photographs of Mr. and Mrs. Wesson which he obtained from the Wesson's Facebook pages.  Mr. Sheline knew he was not authorized to copy or display the pictures as the copyrights were owned by Mr. and Mrs. Wesson, as well as Mr. Atkinson who photographed a number of their wedding pictures as he is a professional photographer.

113.    Upon information and belief, including the post attached as Exhibit M, Defendants Mr. Sheline and John Doe 2 posted defamatory and harassing messages on Mr. Wesson's Facebook page.

114.    Mr. Sheline informed members of the Freakdaddy Network and made sarcastic comments about the fact that Mr. and Mrs. Wesson were expecting the birth of their first child in June, 2010.

115.    Mr. Sheline claims that he is a former military intelligence officer, has made references in one or more of his posts confirming this by showing a video in which he holds up one or more service medals, and indicates that his background and training have helped him obtain the personal information about Plaintiffs, affirming that Mr. Sheline knows of the impropriety of his conduct.

116.    The Sheline's had the option to remove, or not even post harassing and threatening user comments, however, the Shelines permitted the posting of such harassing and threatening comments and failed to remove such harassing and threatening comments from October 2007 up until the days before this lawsuit was filed, at which time, the Shelines began

removing various posts changing the location of posts, removing and changing the appearance and format of the Freakdaddy Network.

117.    Despite having removed a number of messages and restricting access to certain messages, many posts remain containing Plaintiffs' personal information, photos and defamatory posts about them from the Freakdaddy Network, none of which Defendants were authorized to post.

### Factual Allegations Concerning Computer Hacking

118.    Defendants Mr. Sheline and John Doe 1 (aka BountyHunter) engaged in numerous instances of hacking the SC website only properly accessible by SC performers as provided in the posts from the Freakdaddy Network attached as Exhibit N.

119.    In addition to apparently using methods and/or software designed to bypass SC's security measures, Defendants Mr. Sheline and John Doe 1 also obtained confidential information which they knew at all times was the confidential information of SC and they published such information with malicious intent.

### Factual Allegations Concerning Copyright and Service Mark Infringement

120.    The Shelines have also infringed on the service marks and copyrights of Plaintiff by inter alia, utilizing deceptive domain names; improper meta tags; posting content currently and/or previously exclusively licensed to SC; posting links to the SC website; and infringing Plaintiffs' copyrights in other images.

121.    The Freakdaddy Network has sites that incorporate the use of the names "SouthernCharms" in their meta tag information which is used by internet search engines to locate and sort relevant results for people searching the internet.

122.    In addition to meta tags, consumers using the Photo Exchange and/or Southern Charms marks as search terms or keywords are likely to be confused by the Shelines' websites with the names "Southern - - Charms.com" and "photoexchangebbs.com." Consumers could easily be confused as to whether the pages and SC content on the Freakdaddy Network have some connection or affiliation with Southern Charms. By this deceitful conduct consumers find themselves at message board dedicated entirely to former SC performers offering the performers' content from when they were on the SC website. The Sheline's also use this technique to direct consumers to the portion of their website with disparaging and misleading information about SC and its products.

123.    In posting content and overseeing others' posting of content from former SC performers, the Sheline's  advise their members not to post content that is currently shown on the SC website under and exclusive license with each performer in an apparent effort to avoid a direct infringement claim.

124.    Upon information and belief, there have been instances when members of the Freakdaddy Network have posted content that is currently on the SC website but that such content has since been removed.

125.    The Sheline's have posted content for which the Wesson's own the copyright in an effort to humiliate and embarrass Mrs. Wesson who is depicted in some of the images.  It is unknown whether such images remain on the Freakdaddy Network as of the date of filing as the Sheline's appear to have changed their availability several times since being advised of an impending lawsuit.

126.    Defendants have intentionally infringed and continue to infringe SC's copyrights and service marks and have profited from their illegal use of those marks.

127.    Defendants John Doe 1 through 20, along with Mr. Sheline have all posted SC content in an effort to harm SC.

128.    The Shelines profit by having users visit the Freakdaddys.com website pursuant to the terms of use by selling advertising next to content provided by Freakdaddys.com.

129.    The Shelines profit by having users submit content to the Freakdaddys.com website that will attract visitors to the website enabling the Shelines to sell advertising next to that submitted content.

130.    The Shelines profit by selling memberships to the Freakdaddy Network allowing members to access the Freakdaddy content as well as illegal SC content.

131.    The Shelines do not share any portion of their revenue with SC, the Wesson's or the former SC performers whose rights they are violating.

132.    The Shelines knew that they were not authorized to infringe on the marks or SC content owners' copyrights (which in some instances remains with SC).  In fact, on January 17, 2010, Mr. Sheline made a post titled "In starting this area I expected to catch hell." In the posting he says "In starting this area, I expected to catch hell from others and I have; some from my peers. Maybe I'm wrong for having this area up, but I'm keeping it up, and we'll see how it all plays out."  (See Exhibit O).

### Factual Allegations Concerning Defendants' Intent and Conspiracy

133.    Defendant Jonathan Sheline describes his thousands of posts about SC (including the individual Plaintiffs) as a "war" as far back as October, 2007.

134.    From Mr. Sheline's own posts on the various Freakdaddy Network message boards, it appears that he had a dispute with one or more of the performers on the SC website and demanded that SC terminate its business relationship with its performers.

135.    SC did not terminate its business relationship with its performers and Mr. Sheline claims that this fact and his personal dislike for the performers in question "I'm happy to be breaking ties and doing our own thing."

136.    What at first appears to be a juvenile fixation brought on by a mutual decision by competitors to cease sharing internet traffic and/or placing advertising banners on each others' websites in 2007 has come to reveal itself as a potentially very dangerous and obsessive crusade

started and perpetuated by Mr. Sheline. (See Exhibit P)

137. Mr. Sheline has created a special venue for his "war" on the Freakdaddy Network and in doing so he has included his business partner and wife, Defendant Rebecca Sheline, as well as many others named in this Complaint. (See Exhibit Q)

138. Defendant Jonathan Sheline has indeed made harming Plaintiffs his mission, using his personal and professional resources to give his "war" its own identity, and in return for devoting what must be a significant portion of his time and efforts to his "war," he and the other Defendants have been able to damage the business of SC and harm the individual Plaintiffs.

139. Defendant Jonathan Sheline admits his intent in his self-proclaimed "war" against SC and the Wesson and Atkinson families in many of his posts. For example, on July 17, 2008, Mr. Sheline posted "I will pray for your granddaughter Dick. I'm normally a cocksucker to you, but in this instance I will chill."

140. On January 28, 2010, Mr. Sheline made a post titled "You are getting weaker, I'm getting [stronger]…" with a harassing video of Mr. Sheline attached to the post. In addition, Mr. Sheline has indicated in a number of posts that his websites are growing so rapidly that he has had to purchase new computer equipment to service the demands of his business.

141. Mr. Sheline has indicated in videos he posts that he has enlisted and/or received help from other individuals who, upon information and belief, are made up of the members on the Freakdaddy Network named herein as additional Defendants.

142. The Defendants know that they are acting in concert and that their combined efforts are necessary to continue Mr. Sheline's "war" against SC. Defendants are also aware of the damage they are doing to SC's business.

### *COUNT I – Defamation Per Se*

143. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 142, as if fully set forth herein.

144. Defendants Jonathan Sheline, John Doe 1 (aka BountyHunter), John Doe 2 (aka Ogosity), John Doe 3 (aka Big Daddy), John Doe 11 (aka Son Wolf), Defendant Jane Doe 4 (aka ScaredCharmFedUp) and Jane Doe 5 (aka Farrah-FM3), and have made false statements about SC, William Wesson, Laura Wesson and Richard Atkinson claiming that they and/or SC, have stolen and/or "skimmed" money from the SC performers in various posts on the SC Watchdog Board. Such posts are defamatory on their face reflecting negatively on Plaintiffs' persons and character and are intended to harm them in their personal lives, trades, businesses and/or professions.

145. Defendants Jonathan Sheline and Defendant John Doe 2 (aka Ogosity) have made false statements about Laura Wesson claiming that she engaged incest with her mother in various posts on the SC Watchdog Board. Such posts are defamatory on their face reflecting negatively on Mrs. Wesson's person and character and are intended to harm her in her personal life, trade, business, and/or profession.

17

146. Defendant Jonathan Sheline has made false statements about Mr. Atkinson claiming that he is unfaithful to his wife and engages in sexual conduct with SC performers. Such posts are false and defamatory on their face reflecting negatively on Mr. Atkinson's person and character and are intended to harm him in his personal life, trade, and/or profession.

147. Despite requests in 2007, 2008, and most recently in June of 2010, the Shelines have refused to remove the defamatory posts from the Freakdaddy Forum.

148. Defendants, acting individually or in concert, acted unreasonably and in reckless disregard for the truth, in wrongfully making posts on message boards, posting defamatory emails, statements, and news articles, which were based upon information which was, and which Defendants could reasonably have ascertained was, false, malicious, inaccurate, irrelevant and inadequate.

149. Defendants failed to take any reasonable actions to verify the information in the face of positive information that they know cast doubt on the validity of the information.

150. Defendants were not authorized to make the defamatory statements about said Plaintiffs.

151. Defendants published the defamatory statements to numerous third parties by way of posting the defamatory statements in messages on the Freakdaddy Forum.

152. The third parties clearly understood the defamatory nature of the publication of the defamatory statements.

153. Defendants deliberately published the statements and intended that the statements be published.

154. As a direct and proximate result of the many defamatory statements on the Freakdaddy Forum and elsewhere by the aforementioned Defendants, many of SC's performers have terminated their business relationships with SC, thereby damaging SC.

155. The loss of performers and their content damages SC in and of itself by reducing the amount of content and perceived value of the SC website as a product or service to current and prospective SC subscribers.

156. The loss of performers also causes a direct loss of revenue to SC as SC receives a portion of the revenue generated by its performers whose websites SC hosts.

157. As a direct and proximate result of Defendants' aforementioned conduct, many current and prospective subscribers of the SC website have not renewed or not purchased memberships from SC, thereby damaging SC.

158. As it relates to the defamatory statements by the aforementioned Defendants against the Wessons and the Atkinsons, the statements are independently actionable irrespective of any special harm or the existence of any special harm caused by their publication.

159.    Defendants' defamatory statements about said Plaintiffs were intended to and did injure Plaintiffs' reputations, and exposed them to public hatred, ridicule, shame and/or disgrace.

160.    Defendants' defamatory statements about Plaintiffs were intended to and did cause them harm in their respective personal lives, trades, business and professions.

161.    The Defendants' defamatory statements about said Plaintiffs were intended to and did cause them to suffer emotional distress, humiliation, loss of sleep, anxiety and depression for which they have sought medical and/or professional assistance and have adversely affected them in their respective trades, business and professions.

162.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have suffered and continue to suffer general and special damages in an amount which is not presently ascertainable, but will be established at trial.

163.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### _COUNT II – Defamation Per Quod Against All Defendants_

164.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 163, as if fully set forth herein.

165.    The Defendants have all made numerous posts that were false and defamatory to the Plaintiffs as more specifically set forth above and as will be determined at a later date.

166.    Defendants were not authorized to make the defamatory statements about said Plaintiffs.

167.    Defendants published the defamatory statements to numerous third parties by way of posting the defamatory statements in messages on the Freakdaddy Forum.

168.    The third parties clearly understood the defamatory nature of the publication of the defamatory statements.

169.    Defendants deliberately published the statements and intended that the statements be published.

170.    As a direct and proximate result of the many defamatory statements on the Freakdaddy Forum and elsewhere by the aforementioned Defendants, many of SC's performers have terminated their business relationships with SC, thereby damaging SC.

171.    Defendants' defamatory statements about said Plaintiffs were intended to and did injure Plaintiffs' reputations, and exposed them to public hatred, ridicule, shame and/or disgrace.

172.    Defendants' defamatory statements about Plaintiffs were intended to and did cause them harm in their respective personal lives, trades, business and professions.

173.     The Defendants' defamatory statements about said Plaintiffs were intended to and did cause them to suffer emotional distress, humiliation, loss of sleep, anxiety and depression for which they have sought medical and/or professional assistance and have adversely affected them in their respective trades, business and professions.

174.     As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer general and special damages in an amount which is not presently ascertainable, but will be established at trial.

175.     The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### COUNT III – Public Disclosure of Private Facts Against the Shelines, John Doe 1, John Doe 2 and John Doe 3

176.     Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 175, as if fully set forth herein.

177.     The Sheline's, John Doe 2 (aka Ogosity) and John Doe 3 (aka Big Daddy) published personal information to persons within Ohio and throughout the world by using the Freakdaddy Network, including but not limited to posting the personal telephone numbers of Mr. Wesson and Mr. Atkinson; posting the details, addresses and other information about other businesses owned by Mr. Wesson personally, Mrs. Wesson personally, and Mr. Atkinson personally, none of which are affiliated with or in any way connected to SC; mailing letters to the neighbors of the Wesson's and Atkinson's advising the neighbors about the nature of the SC business; and Mrs. Wesson's involvement in Mr. Wesson's business prior to their marriage in posts published on the Freakdaddy Network as well as messages on Mrs. Wesson's Bliss Photography Studios, LLC blog and Facebook page.

178.     Upon information and belief, the Sheline's and John Doe 1 (aka BountyHunter) acted in concert and conspired to post certain personal information and/or confidential business information from the SC restricted message board available to SC performers only and made such confidential information available to the world.

179.     Plaintiffs did not consent, authorize or otherwise grant permission to any of the above named Defendants to publish any of Plaintiffs' personal and/or confidential information.

180.     The aforementioned named Defendants, without consent, authorization or permission, intentionally disclosed Plaintiffs' personal and/or confidential information which of no legitimate pubic concern.

181.     Said Defendants' invasion of privacy was offensive and objectionable to a reasonable person of ordinary sensibilities as it consisted of an invasion into Plaintiffs' personal affairs and resulted in threats, harassment and prank phone calls by countless numbers of the over 12,000 member Freakdaddy Network.

182.     As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have

suffered and continue to suffer general and special damages in an amount which is not presently ascertainable, but will be established at trial.

183. The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNTY IV  - False Light*

184. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 183, as if fully set forth herein.

185. The Sheline's, John Doe 2 (aka Ogosity), John Doe 3 (aka BigDaddy), John Doe 11 (aka SenWolf), John Doe 12 (aka Feaster69), John Doe 20 (aka ebok1), Jane Doe 1 (aka BlackRose), Jane Doe 3 (aka RiverAnn-FD Girls), Jane Doe 4 (aka ScaredFedUpCharm) and Jane Doe 5 (aka Farrah-FM3) have published information about Plaintiffs that, even if true, was done in a manner so as to cast Plaintiffs in a false light.

186. Said Defendants knew or should have known their posts, even if true, would be construed by any reasonable person viewing such information in a manner that would cause that person to view Plaintiffs unfavorably and/or in a less favorable manner than they would have had said Defendants either not provided such information, provided it in a more complete manner and/or not provided it in a biased or prejudicial manner.

187. Defendants were not authorized to disclose such information.

188. The information was of no legitimate public concern.

189. As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer general and special damages in an amount which is not presently ascertainable, but will be established at trial.

190. The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT V – Misappropriation by the Shelines of Each Plaintiff's Name and Likeness*

191. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 190, as if fully set forth herein.

192. The Sheline's have repeatedly used all the Plaintiffs' names, as well as the likenesses of the Wessons and Mr. Atkinson, in the design, display and promotion of the Freakdaddy Network.

193. Defendants are not authorized to use Plaintiffs' names or likenesses.

194. The Sheline's received a benefit by the unauthorized use of Plaintiffs' names and

likenesses.

195.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer general and special damages in an amount which is not presently ascertainable, but will be established at trial.

196.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### COUNT VI - Tortious Interference With Contractual Relationship Against all Defendants

197.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 196, as if fully set forth herein.

198.    Plaintiff SC has a contractual business relationship with its performers described above.

199.    At all relevant times herein, all Defendants have been aware of SC's relationship with its performers

200.    In order for the Sheline's to obtain the identity and contact information of the SC performers, they would have had to visit the SC website, select the page for the performers identified as new Southern Charms, then look for the performers' email addresses.

201.    Mr. Sheline then posts messages, similar or identical to the post in Exhibit H, confirming to he contacted SC's performers which are typically titled "I emailed all of your new clients today SC."  The text of the post reveals the content of Mr. Sheline's messages to SC's performers and typically is as follows: "I sent them all this: Wasssssssupppppppppppppppppppp, You should know some of the things that are being done on Southern Charms. We have dedicated an entire area on our forum to SC – the Southern Charms Watch Dog Area. Go here to see what many Webmasters and other charms (past/present) have to say. We have a Southern Charms Watch Dog Area - 411 Area: http://chat.freakdaddyforum.com Have a good one and by all means, keep on keepin on!  Cyrix & Rebecca (husband & wife team)."  (See Exhibit H).

202.    In addition to the Sheline's intentionally and directly contacting SC's performers by email, all named Defendants intentionally interfered with SC's relationships by providing false, misleading, derogatory and/or defamatory information in messages intended to cause SC's performers to end their relationships with SC.

203.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

204.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT VII - Tortious Interference with Business Relationship Against All Defendants*

205.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 204, as if fully set forth herein.

206.    Plaintiff SC anticipates a prospective contractual relationship with persons searching for their content using their marks.

207.    On SC's website, prospective SC customers, after confirming their age, are able to view performers and a limited amount of their content without having to obtain a paid membership from SC.

208.    The Sheline's also offer a limited amount of free content to their prospective clients on the Freakdaddy Network, but also require them to obtain a paid membership to access additional content.

209.    Unlike SC, the Sheline's, in addition to offering a limited amount of their own free content, also offer a significant amount of free content taken from the SC website.

210.    The additional free content that is posted by the Sheline's and others on the Freakdaddy Forum in an effort to induce them to visit and subscribe to the Freakdaddy Network contains almost exclusively SC content that only paid SC members could otherwise obtain.

211.    The Sheline's and John Doe 1-20 have all posted SC content for free on the Freakdaddy Network.

212.    The Sheline's do not similarly offer a method to obtain their pay content for free, other than in the limited instance described above.  In particular, upon information and belief, the majority of the Freakdaddy specific content on the Freakdaddy Network must be paid for by a customer.

213.    The Sheline's offer content that otherwise must be paid for on the SC website for free on the Freakdaddy Network. Visitors to the Freakdaddy Network do not have to obtain a paid membership to view the SC content.  Only recently have the Sheline's required visitors seeking free SC content to register, which only requires a valid email address.  No credit card or further age verification is required.

214.    SC does not offer any content from the Freakdaddy Network on the SC website.

215.    Defendants knew or reasonably should have known that the Sheline's would receive customers looking for the SC website on the Freakdaddy website by posting SC content.

216.    Defendants knew or reasonably should have known that customers looking for SC content, if they could obtain it for free from the Freakdaddy Network, would not need to purchase it from SC.

217.    As a direct and proximate cause of the Sheline's making free content available, many current and prospective subscribers of the SC website have not renewed or not purchased memberships from SC, thereby damaging SC.

218.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

219.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT VIII- Tortious Interference With Perspective And Past Economic Advantage*

220.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 219, as if fully set forth herein.

221.    By providing a wide variety of exclusive content under Southern Charms and by expending hundreds of thousands of dollars in advertising promoting the Southern Charms mark, consumers have come to know Southern Charms and southerncharms.com as a consistently updated source of adult entertainment offering a wide variety of content.

222.    Those consumers with a favorable view of SC based upon SC's customer service and advertising efforts are likely to become SC customers. Such customers are likely to use the SC mark in search engines to find the southerncharms.com.

223.    SC has an expectation that those customers indicating an interest in SC as demonstrated by their decision to use the SC Marks as search terms will enter into a business relationship with SC.

224.    In addition, many of SC's customers regularly purchase from SC's website, and are repeat customers. It is probable that such customers and others will continue to seek to visit SC website and purchase memberships from SC in the future. Accordingly, SC has an actual business relationship with such customers.

225.    Upon information and belief, Defendants were actually aware or should have been aware of the existence of SC's reasonable expectation of future transactions with customers using the SC Marks as search terms.

226.    Absent the Shelines' intentional and tortious interference through their deceptive advertising and manipulation of search engine "results", it is reasonably certain that SC would have realized additional sales from existing customers and/or new customers.

227.    Defendants have also intentionally and tortiously interfered with SC's future and prospective sales by facilitating the manipulated search engine "results" that pause the Freakdaddy Network's sites to be retrieved when consumers are looking for SC.  Such actions divert consumers from SC's website and business.

228.    Defendants also participate in what is referred to as a "bump" whereby a party makes a new post in an old topic to move make it appear more recent and thereby improve its relevancy in search engine results.

229.    SC also maintained valid agreements with various third parties as commissioned affiliated sellers, these sellers having websites which advertise and link to the SC website.

230.    Defendants intentionally sought to induce such third parties to terminate their agreements with SC and as a result numerous contracts of sale were cancelled.

231.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

232.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT IX - Copyright Infringement Against the Sheline's*

### *17 U.S.C. §§ 501*

233.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 232, as if fully set forth herein.

234.    Plaintiffs William and Laura Wesson own the copyright on certain images of Mrs. Wesson when she was a SC model.

235.    Plaintiffs William and Laura Wesson own the copyright on certain personal photographs depicting them, their friends and families.

236.    Plaintiff Richard Atkinson owns the copyright on certain images he photographed of his friends and family.

237.    SC never authorized, licensed or otherwise condoned or consented to the Defendants' use of the Plaintiffs' copyrights.

238.    The Sheline's have displayed these photographs on the Freakdaddy Network's message boards, particularly the SC Watchdog Board.

239.    Upon information and belief, the Sheline's may have in the past and may again in the future, unless they are enjoined from such conduct, display the photographs in a manner that violates 17 U.S.C. §§ 106A(a) by intentionally distorting or modifying the images in a manner that would be prejudicial to their honor or reputation.

240.    Based on the Sheline's comments in posts, as shown in <u>Exhibit E</u>, the Sheline's do not recognize applicable law protecting the owners of the works in question.

241. The Sheline's have been advised to remove such photographs in 2008, and more recently as shown in Exhibit F and Exhibit G, but have failed to do so.

242. As a result of Defendants' infringement of the Plaintiffs' exclusive rights under copyright, the Plaintiffs are entitled to relief pursuant to 17 U.S.C. §§ 502.

243. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, the Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. The Plaintiffs have no adequate remedy at law, the Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing the Plaintiffs' copyrights and ordering that Defendants destroy all copies of the copyrighted images made in violation of the Plaintiffs' copyrights.

244. As a result of Defendants' infringement of the Plaintiffs' exclusive rights under copyright, the Plaintiffs may also be entitled to further relief under 17 U.S.C. §§ 504 for damages and 17 U.S.C. §§ 505 for attorneys fees, costs and expenses once additional information is obtained and content from the Freakdaddy Network recently removed can be obtained through discovery.

### COUNT X - Service Mark Infringement Against the Sheline's

### 15 U.S.C. §§ 1114 and 1125(a)

245. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 244, as if fully set forth herein.

246. Plaintiff SC owns the service marks referenced herein.

247. The Sheline's do not have any rights to these marks.

248. SC never authorized, licensed or otherwise condoned or consented to the Defendants's use of the SC marks.

249. The Sheline's have infringed on these marks as described herein in connection with the promotion of their Freakdaddy Network, which is likely to deceive and cause confusion and mistake among customers as to the source or origin of the entertainment services offered by the Freakdaddy Network and the affiliation of SC with those services and/or the sponsorship or endorsement of those services by SC.

250. Consumers are likely to be initially confused into believing that clicking on a link or search result with SC's name or Photo Exchange's name will lead to the SC website.

251. Use of SC and Photo Exchange in title of posts on the Freakdaddy Forum causes higher relevance for the Freakdaddy Network in search engine results. When a consumer searches, by example, for the terms "Southern Charms" or "Photo Exchange BBS" in Google, Yahoo, or AOL, etc. posts containing SC content which is still identified as such are displayed and/or derogatory posts about SC are displayed to that user.

252. Consumers are likely to be confused by doing a search for the terms "Southern Charms" or "Photo Exchange BBS" into believing that the websites they are linking to contain information associated with or otherwise affiliated with or connected to SC.

253. Defendants' use of such false and/or misleading descriptions of fact and false and/or misleading representations of fact in commercial advertising and/or promotion misrepresent the nature, characteristics and/or quality of SC's commercial activities and the goods and services provided pursuant to its marks.

254. Defendants have misappropriated and continue to misappropriate SC's substantial property rights in the SC marks, as well as goodwill associated therewith. Unless enjoined and restrained by this Court, such conduct will continue and will permit Defendants to improperly interfere with SC's continued promotion and expansion of the SC marks.

255. As a result of Defendants' ongoing unlawful activities, SC continues to suffer irreparable harm.

256. As a direct and proximate result of Defendants' unlawful activities, SC has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

### _COUNT XI – False Designation of Origin Against the Sheline's_

### _15 U.S.C. §§1125 (a)_

257. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 256, as if fully set forth herein.

258. The Sheline's use of the SC marks in connection with the promotion of their Freakdaddy Network is likely to deceive and cause confusion and mistake among customers as to the source or origin of the entertainment services offered by the Freakdaddy Network and the sponsorship or endorsement of those services by SC.

259. SC never authorized, licensed or otherwise condoned or consented to the Defendants's use of the SC marks.

260. Defendants have misappropriated and continue to misappropriate SC's substantial property rights in the SC marks, as well as goodwill associated therewith. Unless enjoined and restrained by this Court, such conduct will permit Defendants to gain an unfair competitive advantage over SC and allow Defendants to improperly interfere with SC's continued promotion and expansion its business.

261. The acts of Defendants alleged above were committed willfully, with full knowledge of SC's rights and with the intention to deceive and mislead the public.

262. The acts of Defendants alleged above were committed willfully, with full knowledge of SC's rights and with the intention of causing harm to SC.

263. The acts of Defendants alleged above were committed willfully, with full knowledge of SC's rights and with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of SC and the SC marks.

264. Defendants will continue their ongoing acts of false designation of origin, causing irreparable injury to SC, unless such activities are enjoined by this Court.

265. As a direct and proximate result of Defendants' unlawful activities, SC has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

### COUNT XII - Cyberpiracy Against the Sheline's

### 15 U.S.C. §§1125 (d)

266. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 265, as if fully set forth herein.

267. Plaintiff SC owns the aforementioned marks for the name Southern Charms. SC also owns the domain names southercharms.com and southern-charms.com. SC had these rights at the time Defendants registered the domain names "Southern -- Charms.com" and PhotoExchangeBBS.com, and at all other times relevant hereto.

268. Upon information and belief, the Shelines have had, and continue to have, a bad faith intent to profit from the names Southern Charms and Photo Exchange BBS by use of the domains registered by Defendants.

269. Defendants registered the domain names "Southern - - Charms.com" and "PhotoExchangeBBS.com" without the prior knowledge, permission or consent of SC.

270. SC's mark for Southern Charms was famous and/or distinctive at the time of registration by Defendants, and Defendants' domain is nearly identical at a minimum confusingly similar.

271. Defendant's use of Photoexchangebbs.com includes the use of SC's corporate name, Photo Exchange BBS, Inc.

272. Plaintiff is therefore entitled to a judgment from this Court compelling the Sheline's to transfer all ownership in the domain names "Southern - - Charms.com" and PhotoExchangeBBS.com to Plaintiff, pursuant to 15 U.S.C. §1125(d)(1)(C).

273. Plaintiff is further entitled to a Preliminary and Permanent Injunction enjoining the Sheline's from any use of the domain name "Southern - - Charms.com" and PhotoExchangeBBS.com pursuant to 15 U.S.C. §1116(a).

274. Plaintiff is further entitled to a judgment from this Court awarding Plaintiff all actual damages and profits of Defendants' or, in the alternative, statutory damages of not less than One Thousand and 00/100 Dollars ($1,000.00) and not more than One Hundred Thousand

and 00/100 Dollars ($100,000.00) per domain, as the Court considers just, as well as costs and expenses of this action, pursuant to the 15 U.S.C. §1117(a) and (d).

### *COUNT XIII - Product Disparagement and Trade Libel Against the Sheline's*

275.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 274, as if fully set forth herein.

276.    The Sheline's intended to divert consumers to several sites that harmed the goodwill represented SC marks, for commercial gain and with the intent to tarnish and disparage the marks, by confusing as to the source, sponsorship, affiliation, or endorsement of the site.

277.    Defendants have disparaged the SC products and services by falsely misrepresenting SC business practices.  Defendants disparaging and/or defamatory statements falsely include written posts that directly state and/or from which an inference can be drawn that SC has inept and discourteous customer service, is dishonest and does not fulfill it's customer's orders.

278.    Such statements are factually false.

279.    Defendants continually with reckless disregard sought to impeach and reflect Plaintiffs honesty, integrity, quality and sanity by Defendants' statements and wrongful acts.

280.    Defendants have intentionally published numerous disparaging remarks in message boards posting those statements to third parties.

281.    These statements now appear on the Internet in a permanent form accessible to millions.

282.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in an amount which is not presently ascertainable, but will be established at trial.

283.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT XIV  - Ohio Deceptive Trade Practices Act Against the Sheline's*

284.     Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 283, as if fully set forth herein.

285.    Defendants' conduct described herein, including but not limited to their disparagement of SC's website and services; false representations about SC and its business; use of SC's marks to cause confusion as to the affiliation, connection, association, source, sponsorship and/or approval of Defendants' competing services, constitutes a violation of Ohio Revised Code § 4165.02.

286.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in an amount which is not presently ascertainable, but will be established at trial.

287.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of attorneys fees, costs and expenses against these Defendants

288.    Plaintiff is further entitled to a Preliminary and Permanent Injunction enjoining the Defendants from continuing such conduct pursuant to Ohio Revised Code § 4165.03.

### *COUNT XV  - Intentional Infliction of Emotional Distress Against All Defendants*

289.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 288, as if fully set forth herein.

290.    Defendants intended to cause Plaintiffs emotional distress, or knew that their acts or omissions would result in serious emotional distress to Plaintiffs.

291.    Indeed, various Freakdaddys.com users and subscribers discussed the likely results of Defendants' postings.

292.    Even after receiving the postings and comments that confirmed the intent of their users to harass Plaintiffs, Defendants chose to continue to post Plaintiffs' personal information and the messages of other users to harm Plaintiffs.

293.    Even after Defendants were informed that their actions had lead to threats and harassment, they refused to remove the private information that they had posted, and in doing so further knowingly encouraged that their users continue to engage in such offensive conduct.

294.    By leaving Plaintiffs' private information up on Freakdaddys.com, Defendants knew that further injury and damage would be caused to Plaintiffs.

295.    By leaving Plaintiffs' private information and directives of their users to utilize such information up on Freakdaddys.com, Defendants caused further injury and damage to Plaintiffs.

296.    Defendants' conduct was so malicious, oppressive, extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

297.    As an example of the outrageousness of Defendants' conduct, in particular, their message board posts, conveying their malicious, oppressive, and extreme nature, starting on August 30, 2008, Defendant Jonathan Sheline made a series of posts in a topic called "Laura Wesson – Cum 2 Me when you want a real man – This is 4 YOU baby!" directed at Mr. and Mrs. Wesson and generally conveying that Mr. Sheline wanted to have sexual relations with Mrs. Wesson and her mother.  This topic and all its posts could be viewed by anyone visiting the Freakdaddy Forum without registering and has been viewed over 2,476 times.  The posts in the

30

topic also indicate that Mr. Sheline had been thinking about Mrs. Wesson and planned to use pictures of her for masturbation. The first post was followed with posts by Mr. Sheline on September 4, 2008, September 19, 2008, October 13, 2008, October 17, 2008, November 14, 2008, December 17, 2008, and January 9, 2009, apparently, intended to coincide with Mrs. Sheline's menstrual cycle. This particular post was also joined with posts by Defendants, Mrs. Sheline, John Doe 3 and Jane Doe 5.

298.    In addition to his posts in the aforementioned topic, Mr. Sheline posts a minute and a half video in which he has a camera focused on himself and he is speaking to Mr. and Mrs. Wesson indicating his desire to have sexual relations with Mrs. Wesson, simulating sexual acts, and holding up a picture of Mrs. Wesson into the camera.

299.    As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

300.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer general and special damages in an amount to be determined at trial.

301.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### COUNT XVI - Loss of Filial Consortium Against All Defendants

302.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 301, as if fully set forth herein.

303.    Defendants intentionally took the actions and/or failed to act as described herein, and disclosed private and confidential information of Plaintiffs when using Freakdaddys.com.

304.    As a direct and proximate result of the Defendants' acts and omissions as set forth above, Plaintiffs' respective families and children have suffered loss of filial consortium including, but not limited to, the loss of services, society, companionship, comfort, love and solace of their family members, Richard Atkinson, Judy Atkinson, William Wesson and Laura Wesson.

305.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer general and special damages in an amount to be determined at trial.

306.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### COUNT XVII – Intentional Destruction of Evidence

307.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 306, as if fully set forth herein.

308.    The Sheline's knew of the probable litigation after receiving correspondence from Plaintiffs' counsel dated June 2, 2010 and June 4, 2010.  (See Exhibit F and Exhibit G).  Plaintiff was aware of the first letter as evidenced by his posting it on his message board on June 3, 2010. The second letter was also received by Mr. Sheline as it was confirmed by UPS delivery and sent by facsimile to his attorney, the transmission of which was also confirmed.

309.    Exhibit R shows the difference in total posts on the Freakdaddy Network's message boards between May 25, 2010 and June 6, 2010.  On May 25, 2010, the Freakdaddy Network showed a total of 43,520 posts.  On June 6, 2010, the total posts shown was reduced to 41,318.  This represents a significant reduction in content which is one of Plaintiffs' objectives; however, this reduction is temporary and appears to have been obstructive.

310.    Upon information and belief, the SC Content Board, which appeared to have been removed on June 6, 2007, was again re-posted on June 7, 2010; however, the total number of posts amongst all the message boards is still believed to have been dramatically reduced.

311.    Upon information and belief, Defendants made this temporary reduction and then reposted the SC Content Board in an effort to hide the number of messages they were editing and/or deleting.

312.    Defendant Jonathan Sheline and his wife are a self-proclaimed "husband and wife team" and are identified as administrators on the Freakdaddy Network and as such would be the only people who would have authority to modify the website.

313.    Upon information and belief, after receiving notice of litigation, Defendants amended, modified, manipulated and/or deleted certain content from the Freakdaddy Network pertinent to this matter.

314.    Upon information and belief, after receiving notice of litigation, Defendants altered the appearance of the Freakdaddy Network.

315.    Upon information, Defendants alleged or manipulated statistics about the Freakdaddy Network pertinent to this matter.

316.    Defendants' amendments, modifications, manipulations, changes and deletions of the content and statistics for the Freakdaddy Network were done intentionally and in an effort to eliminate claims or mitigate certain claims against them, to deceive the members of the Freakdaddy Network, to deceive this Court and to frustrate the purpose of this lawsuit.

317.    In particular, Defendants knew that such conduct was prohibited and could subject them to additional liability and claim by Plaintiffs.

318.    Plaintiffs have been prejudiced by Defendants' conduct and have been damaged in an amount not yet ascertainable, but to be determined at trial.

319.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

### *COUNT XVIII – Negligent Destruction of Evidence*

320.     Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 319, as if fully set forth herein.

321.     The Sheline's knew of the probable litigation after receiving correspondence from Plaintiffs' counsel dated June 2, 2010 and June 4, 2010.  (See Exhibit F and Exhibit G).  Plaintiff was aware of the first letter as evidenced by his posting it on his message board on June 3, 2010. The second letter was also received by Mr. Sheline as it was confirmed by UPS delivery and send by facsimile to his attorney, the transmission of which was also confirmed.

322.     Exhibit R shows the difference in total posts on the Freakdaddy Network's message boards between May 25, 2010 and June 6, 2010.  On May 25, 2010, the Freakdaddy Network showed a total of 43,520 posts.  On June 6, 2010, the total posts shown was reduced to 41,318.  This represents a significant reduction in content which is one of Plaintiffs' objectives; however, this reduction was temporary and appears to have been obstructive.

323.     Upon information and belief, the SC Content Board, which appeared to have been removed on June 6, 2007, was again re-posted on June 7, 2010; however, the total number of posts amongst all the message boards is still believed to have been dramatically reduced.

324.     Upon information and belief, Defendants made this temporary reduction and then reposted the SC Content Board in an effort to hide the number of messages they were editing and/or deleting.

325.     Defendant Jonathan Sheline and his wife are a self-proclaimed "husband and wife team" and are identified as administrators on the Freakdaddy Network and as such would be the only people who would have authority to modify the website.

326.     Upon information and belief, after receiving notice of litigation, Defendants amended, modified, manipulated and/or deleted certain content from the Freakdaddy Network pertinent to this matter.

327.     Upon information and belief, after receiving notice of litigation, Defendants altered the appearance of the Freakdaddy Network.

328.     Upon information, Defendants alleged or manipulated statistics about the Freakdaddy Network pertinent to this matter.

329.     Defendants' amendments, modifications, manipulations, changes and deletions of the content and statistics for the Freakdaddy Network were done negligently and resulted in the loss of crucial evidence.

330.     Plaintiffs have been prejudiced by Defendants' conduct and have been damaged in an amount not yet ascertainable, but to be determined at trial.

### **COUNT XIX – *Conspiracy***

331.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 330, as if fully set forth herein.

332.    The Sheline's repeatedly expressed their malicious intent to harm Plaintiffs' in multiple posts on their message boards and in emails to SC's client, letters to the individual Plaintiffs' neighbors, harassing telephone calls, accessing and displaying SC's confidential business communications, and other conduct alleged herein.

333.    The amount of time and effort needed to monitor when SC obtains new performers and when current performers cease their relationship with SC would be virtually impossible for any one person to perform.

334.    While SC regularly has between 700 and 800 active performers on its website at any one time, that number fluctuates for various reasons over time.

335.    On many days SC will add as many as 10 new performers and/or remove as many as 20 performers from its site.

336.    In order to undertake the actions Defendants have taken against Plaintiffs, they would need someone to constantly monitor the SC website and then actively view all the new and old performers pages to obtain their contact information.  Then someone would have to contact those performers.

337.    Mr. and Mrs. Sheline have posted that they are both currently attending a local university as well as raising one or more children, all of which must occupy a significant amount of their time.  In addition, the Sheline's also own and operate the Freakdaddy Network which takes additional time and is believed to be their primary method of financial support for their family.

338.    Accordingly, the Sheline's would need the assistance of others.

339.    All the named Defendants have assisted the Sheline's and conspired with them to harm the Plaintiffs as is evidenced by all of their posts, which include information, actionable statements, as well as the illegal and other content.

340.    The acts of the Defendants' have been intentional, willful and malicous.

341.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have and continue to suffer damages in an amount to be determined at trial.

342.    The acts of one or more of the Defendants as described above, acting individually or in concert, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages, attorneys fees, costs and expenses against these Defendants.

## COUNT XX – Punitive Damages

343.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 342, as if fully set forth herein.

344.    The misconduct of Defendants set forth above constitutes malicious behavior for which the Plaintiffs are entitled to an additional award of punitive damages, plus attorneys fees, costs and the expenses of litigation.

Wherefore, Plaintiffs pray for judgment against Defendants, as follows:

1.    On Count I, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against such defamatory statements, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

2.    On Count II, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against such defamatory statements, plus costs of and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

3.    On Count III, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against such disclosures of private information, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

4.    On Count IV, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against Defendants' acts and omissions, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

5.    On Count V, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against such misappropriation, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

6.    On Count VI, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages in excess of $75,000.00, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

7.    On Count VII, Plaintiff prays for judgment against Defendants jointly and severally, for damages in excess of $75,000.00, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

8.    On Count VIII, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages in excess of $75,000.00, plus costs and expenses of this action, attorneys

fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

9.      On Count IX, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial, for declaratory and preliminary and permanent injunctive relief against such infringement, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

10.      On Count X, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial, for declaratory and preliminary and permanent injunctive relief against such infringement, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

11.      On Count XI, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages as a result of Defendants' false designation in an amount to be proved at trial, for declaratory and preliminary and permanent injunctive relief against such conduct, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

12.      On Count XII, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages and/or statutory damages in an amount to be proved at trial, for declaratory and preliminary and permanent injunctive relief against such cyberpiracy, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

13.      On Count XIII, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages from such trade libel and product disparagement in an amount to be proved at trial, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

14.      On Count XIV, Plaintiff SC prays for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial, for preliminary and permanent injunctive relief against such deceptive practices, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

15.      On Count XV, Plaintiffs pray for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial for such actions, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

16.      On Count XVI, Plaintiffs pray for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial for such losses, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

17.     On Count XVII, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial for such destruction of evidence, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

18.     On Count XVIII, Plaintiffs pray for judgment against Defendants jointly and severally, for damages in an amount to be proved at trial for such destruction of evidence, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

19.     On Count XIX, Plaintiffs pray for judgment against Defendants jointly and severally, for general, special and punitive damages in an amount to be proved at trial for conspiracy, plus costs and expenses of this action, attorneys fees and such other and further relief as the Court deems fair and appropriate under the circumstances.

20.     On Count XX, Plaintiffs pray for judgment against Defendants jointly and severally, for punitive damages, plus attorneys fees, costs and the expenses of litigation.

Respectfully submitted,

**WEBSTER DUBYAK & WEYLS CO., LPA**


 *s/ Timothy J. Weyls, Jr. (Trial Attorney)*
John R. Liber, II (00588424)
Timothy J. Weyls, Jr. (0069734)
Nicole D. LeClair (0085531)
1220 W. 6th Street, Suite 600
Cleveland, Ohio 44113
jliber@websterdubyak.com
tjweyls@websterdubyak.com
nleclair@websterdubyak.com
P: (216) 566-1144
F: (216) 566-1221
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues of fact triable to a jury as of the time of trial.

Respectfully submitted,

**WEBSTER DUBYAK & WEYLS CO., LPA**

 _s/ Timothy J. Weyls, Jr. (Trial Attorney)_
John R. Liber, II (00588424)
Timothy J. Weyls, Jr. (0069734)
Nicole D. LeClair (0085531)
1220 W. 6th Street, Suite 600
Cleveland, Ohio 44113
jliber@websterdubyak.com
tjweyls@websterdubyak.com
nleclair@websterdubyak.com
P: (216) 566-1144
F: (216) 566-1221
*Attorneys for Plaintiffs*